**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

MAREASE LUCKY,

    Plaintiff,

    v.

SHERIFF CHUCK JENKINS,
RANDY MARTIN,
NURSE JANE DOE,
NAPHCARE, INC.,
JOHN DOE CORR. OFFICERS 1-5,

    Defendants.

Civil Action No.:  JRR-25-2169

**MEMORANDUM OPINION**

Self-represented Plaintiff Marease Lucky filed this civil rights complaint against Defendants Chuck Jenkins, Sheriff of Frederick County; Randy Martin, Inmate Services Director for Frederick County Adult Detention Center ("FCADC"); Nurse Jane Doe who is employed by NaphCare, Inc., and works at FCADC; NaphCare, Inc.; and John Doe Correctional Officers 1 – 5, alleging he was denied his right to practice his religion, denied access to the courts, and was denied the right to refuse medication.  ECF No. 17.  Plaintiff sues individual Defendants in their individual and official capacities.  Defendants Jenkins, Martin, and John Doe Correctional Officers have filed a Motion to Dismiss the Amended Complaint, and Defendant NaphCare has filed a Motion to Dismiss or, in the Alternative, for Summary Judgment.  ECF Nos. 18, 21.[1]  Plaintiff opposes the

---

[1] Initially, Defendants Jenkins, Martin and John Doe Correctional Officers filed a Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 10), asserting, *inter alia*, that Plaintiff failed to exhaust his administrative remedies.  Defendant NaphCare also filed a Motion to Dismiss or, in the Alternative, for Summary Judgment.  ECF No. 14.  Both motions addressed Plaintiff's original complaint.  Plaintiff responded to the first dispositive motion and addressed the allegation that he failed to exhaust administrative remedies.  ECF No. 16.  Shortly thereafter, Plaintiff filed an Amended Complaint.  ECF No. 17.  Defendants responded to the Amended Complaint. ECF Nos. 18, 21.  The original dispositive motions filed by Defendants (ECF Nos. 10 and 14) will therefore be denied as moot.

motions.  ECF Nos. 24, 25.  Defendants filed Replies in support of their Motions.  ECF Nos. 26, 27.  Also pending is Defendant NaphCare's Consent Motion for Leave to File a Motion to Dismiss or, in the Alternative, for Summary Judgment, which shall be granted.  ECF No. 20.

The matters pending before the Court have been fully briefed; there is no need for a hearing. Local R. 105.6 (D. Md. 2025).  For the reasons that follow, Defendants' Motions shall be granted.

## I.    BACKGROUND

### A.    Complaint Allegations

#### 1.    Religion Claim

Plaintiff alleges that Defendants Jenkins, Martin, and John Doe Correctional Officers violated his First Amendment right to freely exercise his religion and violated his Fourteenth Amendment right to equal protection under the law by providing more opportunities for worship to Christian inmates than for Muslim inmates.  ECF No. 17 at 5-7.  He states that he is a devout Muslim who has faithfully adhered to the religious obligations and spiritual practices central to his Islamic faith, which he could not continue doing when he became incarcerated at FCADC.  *Id*. at 5, ¶ 12.

While detained at FCADC, Plaintiff states he made repeated requests to participate in Jumu'ah, "the Friday congregational prayer mandated by Islamic doctrine."  ECF No. 17 at 5-6, ¶ 13.  He claims that live Jumu'ah services were prohibited at FCADC and that Muslim detainees were offered a pre-recorded audio broadcast in its place, or they could choose to forgo the religious observance entirely.  *Id*. at ¶14  Plaintiff states that he requested weekly live Jumu'ah services from Randy Martin and John Doe staff and was told the issue was non-grievable.  *Id*. at ¶ 15.  He also explained that the pre-recorded audio broadcast that was offered did not fulfill the requirements for Jumu'ah under Islamic law.  *Id*. at ¶ 16.  According to Plaintiff, Martin arranged weekly in-

person Christian services but did not provide an Imam for Muslim inmates even though a volunteer was available to serve in that capacity.  *Id*. at ¶ 17.  Plaintiff does not provide the name of the volunteer Imam.

He adds that Christian detainees were given Bibles translated into various languages while Muslim inmates were not given Qurans written in Arabic, which Plaintiff maintains is "the sacred language of the Islamic scripture."  *Id*. at ¶¶ 18, 19.  This was done, according to Plaintiff, despite the fact that donated Arabic Qurans were available.  *Id*. at ¶ 18.  Additionally, Plaintiff claims that electronic tablets provided to detainees at FCADC were pre-loaded with an app entitled "Pathway to Faith" offering "over 800 video sermons and educational programs from sixteen Christian organizations."  *Id*. at ¶ 20.  According to Plaintiff, no equivalent religious resources were available to the Muslim population despite comparable Islamic content being available.  *Id*.  Plaintiff does not identify the comparable Islamic content in his Amended Complaint or his earlier-filed grievance.

Plaintiff's grievance about the lack of weekly congregational Friday prayer for Muslims was filed on September 29, 2023.  ECF No. 17-1 at 1.  He complained that Christians were provided weekly worship services and a tablet app that allowed access to a number of pre-recorded lectures and sermons, while Muslims were not, showing a bias in favor of Christians.  *Id*. at 2.  He added that he was only provided with a pocket-sized Quran, which was difficult to read, and he knew that a normal sized Quran with regular sized print had been donated to the detention center. *Id*. at 3.  Based on the foregoing, Plaintiff concluded the facility demonstrated little regard for the Muslim population, and reiterated that the Christian inmates had a weekly study class.  *Id*.  The response to this grievance stated:

> I will see about getting you a larger print Quran. With regards to Muslim Services, it is non-grievable.  The administration has made the decisions that

Muslim service will be [illegible] using a pre-recorded service.  If you want religious reading material, send a request slip to Mr. Martin.  We do not have a service for Christians. The Bible Study is led by a volunteer.

ECF No. 17-1 at 1.  The signature is illegible.

### 2.       Access to Courts

Plaintiff states he was preparing to represent himself in a criminal proceeding scheduled for October 11, 2023.  ECF No. 17 at 7, ¶ 24.  On September 25, 2023, his "legal support team" mailed him "critical defense materials" essential to his defense. *Id*. at ¶ 25.  The materials included witness information and "strategy materials."  *Id*. at 8, ¶ 27.  USPS Priority Mail delivery records confirmed the package was delivered on September 26, 2023, at 11:53 a.m.  *Id*. at 7, ¶ 26.  Despite timely delivery to the detention center, Plaintiff did not receive the package.  *Id*. at 8, ¶ 28.

Plaintiff's grievance regarding legal mail was filed on September 29, 2023.  ECF No. 17-2.  In that grievance, he complained: "Mail was sent pursuant to the express directions found in the inmate handbook.  UPS confirmed delivery on 9/26/23. Documents vital to my pro se defense of my upcoming court date."  *Id*. at 1.  The response advised that legal mail "must be sent from an attorney's office or public defender's office."  *Id*.  Plaintiff was further told that if his family sent legal material to him, they should have sent it to the "Greensboro, NC Address so that it can be scanned and put on your tablet for you to view."  *Id*.  At the end of the response, there is a notation of "non-grievable."  *Id*.  In the section of the grievance form to provide reasons an inmate disagrees with a grievance response, Plaintiff states that legal mail is not defined in the handbook as mail coming from an attorney's office.  *Id*.

Plaintiff claims his ability to represent himself was impaired because his mail was never delivered.  ECF No. 17 at 8, ¶ 32. Plaintiff faults Defendants Jenkins and John Doe Correctional Officers for withholding his legal mail, enforcing a policy that targets detainees who represent

themselves, and failing to provide him with a valid reason for non-delivery of his legal mail. *Id*. at ¶¶ 30-32.  Plaintiff maintains the policy "effectively created two classes of detainees: those represented by attorneys, whose legal mail received privileged handling, confidentiality, and timely delivery; and those representing themselves, whose legal correspondence was delayed, censored, scanned, or destroyed." *Id*. at 9, ¶ 37.  Plaintiff does not provide the case number of the criminal matter where he appeared pro se; nor does he state the outcome of that proceeding.

### 3.    Medication and Segregation

Plaintiff alleges that on September 21, 2023, he was called to the medical unit for a blood pressure check and his blood pressure was deemed "elevated."  ECF No. 17 at 10, ¶ 39.  A nurse told Plaintiff he had to begin taking medication to manage his blood pressure; Plaintiff declined due to side effects of the medication. *Id*. at ¶¶ 40, 41. Plaintiff claims that when he declined to accept the prescription and suggested he would like to attempt to manage his blood pressure through non-pharmaceutical means, including diet, hydration, and exercise, the nurse told him he would be placed in segregation if he did not take the medication. *Id*. at ¶¶ 41, 42.  The nurse further informed Plaintiff that his refusal would be documented as non-compliance. *Id*. at ¶ 43.  Plaintiff claims he was then transferred to a holding unit consisting of a cell used for punishment without further consultation from another medical care provider or a hearing. *Id*. at ¶ 44.  He states that while in the holding unit he did not receive any enhanced medical care, blood pressure monitoring or wellness support. *Id*. at ¶¶ 44, 45, 46.  After being there for two days, Plaintiff filed a grievance alleging that his assignment there was retaliatory and punitive. *Id*.

Plaintiff's grievance regarding his placement on segregation was filed on September 23, 2023, and claimed that, two days before the filing, medical staff authorized medicine without his approval after his blood pressure was checked and the nurse told him to take blood pressure

medication. ECF No. 17-3 at 1-2. He stated that he refused to take the medication, explaining he would like to try to make lifestyle changes to lower his blood pressure before resorting to medication. *Id*. at 2. The attending nurse told him lifestyle changes would not work and told him he would have a stroke if he did not take the medication. *Id*. She further advised he would be taken out of general population if he refused to take the medication and placed on hold in a "sensory deprivation unit." *Id*. Plaintiff claimed that the "medical equipment used to assess [his] blood pressure gave wildly different readings" and that some nursing staff did not know how to use it, as he was permitted to stand while his blood pressure was taken (which he presumably asserts is improper technique). *Id*. at 3. He further claimed that requiring him to take medication for his blood pressure was a discriminatory practice showing favoritism for allopathic medicine, citing the lack of homeopathic options. *Id*. at 2-3. Lastly, he claimed the policy was discriminatory against detainees who have high blood pressure. *Id*. at 3. The response to this grievance states: "The provider put you on med checks due to non-compliance with medication. While under the care of FCADC you need to adhere to what the provider orders. Take the medication as prescribed." *Id*. at 1. The response also indicates that the matters raised are non-grievable. *Id*.

In his Amended Complaint, Plaintiff states that the conditions in the holding cell were "harsh, isolating, and punitive," and included "limited human contact, and deprivation of normal privileges – conditions indistinguishable from disciplinary segregation." ECF No. 17 at 10, ¶ 47. Plaintiff adds that his assignment to segregation lacked any legitimate medical or penological justification, and was intended to "coerce Plaintiff into surrendering his right to bodily autonomy." *Id*. at 11, ¶ 52. He faults Defendants Jenkins, Nurse Jane Doe, and John Doe, who "acted with deliberate indifference and in retaliation for Plaintiff's exercise of constitutionally protected rights." *Id*. at ¶ 54. Additionally, he states that Jenkins, as the final policy maker, maintained or

6

permitted a policy, practice, or custom "under which inmates who declined medical treatment were punished through segregation." *Id.*

### 4.    State Law Claims

Plaintiff also raises a claim that Jenkins, Martin, and John Doe Correctional Officers violated his religious freedom under Article 36 of the Maryland Declaration of Rights; and Jenkins, Nurse Jane Doe and unnamed medical staff violated his right to due process under Article 24 of the Maryland Declaration of Rights through "medical coercion." ECF No. 17 at 21-22.

### B.    Defendants' Response

As set forth above, Defendants Jenkins, Martin, and John Doe Correctional Officers 1-5 filed a Motion to Dismiss following receipt of Plaintiff's Amended Complaint. ECF No. 18. They assert that Plaintiff fails to allege individualized conduct required to state a personal capacity claim; fails to state a claim that FCADC's religious programming was the result of discriminatory animus; and fails to state a claim regarding denial of his legal mail. ECF No. 18-1. They additionally argue that Plaintiff's claim regarding placement in medical segregation represents a disagreement with a medical decision to prescribe him medication for hypertension and is not actionable. *Id.*

For its part, in its Motion, Defendant NaphCare asserts that the sole claim against it is a claim pursuant to *Monell v. Dept. of Soc. Sevs.*, 436 U.S. 658 (1978). ECF No. 21-1 at 2. As such, NaphCare argues, Plaintiff has failed to meet the pleading standard of Fed. R. of Civ. P. 8(a) because the Amended Complaint does not provide it with fair notice of what the claim is and the grounds upon which the claim rests. *Id.* Specifically, NaphCare points out the absence of any mention of a policy or custom that resulted in violation of Plaintiff's constitutional rights. *Id.* For this reason, NaphCare asserts that the Amended Complaint must be dismissed.

In the alternative, NaphCare provides medical records that it asserts demonstrate there is no dispute of material fact that Plaintiff had hypertension for which he was prescribed medication, and that efforts to educate him about the dangers of ignoring his condition were made but unsuccessful leading to the need to closely monitor his well-being. *Id*. at ECF Nos. 21-3 - 21-9. NaphCare urges that, during Plaintiff's incarceration at FCADC, his blood pressure ranged from a high of 220/137 to a low of 126/108; his diastolic pressure never dipped below 100. *See* ECF No. 21-6. In short, NaphCare maintains that "it was Plaintiff, not NaphCare or any individual employed by NaphCare at FCADC, that was deliberately indifferent to his serious medical condition." ECF No. 21 at 2. Based on this evidence, NaphCare argues it is entitled to summary judgment in its favor.

## II.    STANDARD OF REVIEW

### A.    Motion to Dismiss

As noted, Defendants Jenkins, Martin, and Unknown Correctional Officers move to dismiss the Amended Complaint. ECF No. 18. A motion to dismiss pursuant to Rule 12(b)(6) "tests the sufficiency of the claims pled in a complaint." *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019). To overcome a Rule 12(b)(6) motion, a complaint must allege sufficient facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

In evaluating the sufficiency of the plaintiff's claims, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019)

(alteration in original) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). However, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement[.]" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Accordingly, in ruling on a motion brought under Rule 12(b)(6), a court "separat[es] the legal conclusions from the factual allegations, assum[es] the truth of only the factual allegations, and then determin[es] whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'" *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012) (quoting *Iqbal*, 556 U.S. at 1949–50).

Preliminarily, the court observes that *pro se* complaints must be construed liberally and are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "Dismissal of a pro se complaint for failure to state a valid claim is therefore only appropriate when, after applying this liberal construction, it appears '*beyond doubt that the plaintiff can prove no set of facts* in support of his claim which would entitle him to relief.'" *Spencer v. Earley*, 278 F. App'x 254, 259–60 (4th Cir. 2008) (emphasis in original) (quoting *Haines v. Kerner*, 404 U.S. 519, 521 (1972)). Despite this liberal construction requirement, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Courts are not required to "conjure up questions never squarely presented to them" or "construct full blown claims from sentence fragments." *Id.*

When ruling on a motion to dismiss, the Court may consider materials attached to the complaint without transforming the motion to dismiss into one for summary judgment. *See* Fed. R. Civ. P. 10(c). The Court may also consider materials attached to a motion to dismiss, so long

9

as such materials are integral to the complaint and are not challenged as to their authenticity. *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

**B.      Motion to Dismiss or, in the Alternative, for Summary Judgment**

Defendant NaphCare's motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Federal Rule of Civil Procedure 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). Under Rule 12(b)(6), however, a court, in its discretion, may consider matters outside the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *Adams Hous., LLC v. City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. 2016) (*per curiam*). As is the case here, when a movant titles its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the Court's consideration, the parties are deemed on notice that conversion under Rule 12(d) may occur; the Court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings [] offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it[,] or simply not consider it." 5 C Wright & Miller, Federal Practice & Proc. § 1366, at 159 (3d ed. 2004, 2011 Supp.). This

10

discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165, 167.

**B.      Discovery**

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011); *Putney v. Likin*, 656 F. App'x 632, 638–39 (4th Cir. 2016) (*per curiam*); *McCray v. Maryland Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P.  56(d); *see also Harrods Ltd.*, 302 F.3d at 244–45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs. LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine

11

issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trustees, Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit … is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods Ltd.*, 302 F.3d at 244 (citations omitted). Despite the absence of the non-moving party's Rule 56(d) affidavit, however, the Court shall not issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit places "great weight" on the Rule 56(d) affidavit, and holds that mere "reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit," the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted).

Failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary," and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods Ltd.*, 302 F.3d at 244–45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

Here, Plaintiff briefly mentions discovery in response to NaphCare's motion, claiming that discovery is necessary because he lacks access to "NaphCare's internal medical policies, segregation protocols, training materials, and witnesses" which he claims are essential to rebut the assertion that he fails to adequately state a *Monell* claim. ECF No. 25 at 5. Plaintiff also asserts,

however, that there need not be a formal policy requiring his assignment to a cell in the Medical Unit, and that there is a "de facto policy," so the Amended Complaint therefore survives scrutiny under Rule 12(b)(6). *Id*. at 6-8. While Plaintiff's Amended Complaint survives scrutiny with respect to the policy prong of the *Monell* claim, as explained below, it is the second component of the claim that fails on the undisputed material facts. Plaintiff's request that this Court delay the decision on the Motion for Summary Judgment, or deny it without prejudice pending completion of discovery, will be denied.

**C.    Summary Judgment**

Summary judgment is governed by Federal Rule of Civil Procedure 56(a), which provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48(1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing

the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002); *see F.D.I.C. v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013)(same).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644–45. Therefore, in the face of conflicting evidence raising disputes of material fact, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

To defeat a motion for summary judgment, conflicting evidence, if any, must give rise to a genuine dispute of material fact. *See Anderson*, 477 U.S. at 247–48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." 477 U.S. at 252. Importantly, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

As noted, because Plaintiff is self-represented, his submissions are liberally construed. *Erickson*, 551 U.S. at 94. That notwithstanding, the Court must also abide the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*,

999 F.2d 774, 778–79 (4th Cir. 1993) and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

### III.    DISCUSSION

**A.    Motion to Dismiss**

Defendants Jenkins, Martin, and unknown John Doe Correctional Officers assert in their Motion to Dismiss that the Amended Complaint fails to state a claim of personal participation against them and otherwise fails to state a cognizable constitutional claim. ECF No. 18-1. A viable claim under 42 U.S.C. § 1983 requires a showing of personal fault based upon a defendant's personal conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). Relatedly, there is no respondeat superior liability under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). To state a claim for supervisory liability under § 1983 based on a subordinate's conduct, the plaintiff must allege that (1) the supervisor had actual or constructive knowledge that the subordinate's conduct "posed a

15

pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff"; (2) the supervisor responded in a manner that was so inadequate as to demonstrate "deliberate indifference to or tacit authorization" of the subordinate's conduct; and (3) "an affirmative causal link between the supervisor's inaction" and the plaintiff's constitutional injury. *Timpson by & through Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Plaintiff alleges that Defendant Sheriff Chuck Jenkins is the chief policy maker for FCADC and has authority regarding policies pertaining to inmate religious services, inmate mail, and medical housing decisions. ECF No. 17 at 4. On that basis, Plaintiff claims that Jenkins is liable for "implementing or ratifying the unconstitutional policies and practices" he describes in the Amended Complaint. *Id*. Plaintiff claims that Defendant Randy Martin, the Inmate Services Director at FCADC, is responsible for "inmate programs and religious accommodations at the facility." *Id*. He states that Martin had "direct oversight" of chaplain services, inmate religious materials, and religious program scheduling. *Id*. Plaintiff adds that Martin "personally interacted with [him] regarding religious accommodation requests at issue." *Id*.

In the factual allegations of the Amended Complaint, Plaintiff includes only two allegations against Martin: (1) Martin denied the September 29, 2023 grievance as "non-grievable;" and (2) weekly Christian services were arranged under Martin's supervision. ECF No. 17 at 6, ¶¶ 15, 17. As for Jenkins' participation, Plaintiff alleges: (1) Jenkins enforced a policy that legal mail had to originate from an attorney's office or the public defender's office, which results in punishment of those who choose to procced pro se, *id*. at 8-9, ¶¶ 30, 35; (2) the officer who answered Plaintiff's grievance was acting under Jenkins' supervision when he stated that Plaintiff would not be moved out of medical segregation unless he agreed to take the medication, *id* at 11, ¶ 49; and (3) when

16

Jenkins allowed Plaintiff to be assigned to segregation, he acted with deliberate indifference to, and in retaliation for, Plaintiff exercising his rights, and enforced or maintained a policy, practice or custom of allowing inmates who decline medical treatment to be punished with segregated confinement *id.* at ¶ 54.

Jenkins, Martin, and the John Doe Officers argue that the Amended Complaint does not go far enough to state personal participation by individual defendants in unlawful conduct. Rather, they assert, Plaintiff is attempting to "transform institutional operations and policies at FCADC into individual-capacity liability against supervisory officials." ECF No. 18-1 at 14. Because § 1983 liability can not be based on respondeat superior liability, these Defendants argue that the Amended Complaint fails to state a claim against them. *Id*.

Indeed, supervisory liability "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). As explained above, to state a claim for supervisory liability under § 1983 based on a subordinate's conduct, the plaintiff must allege that (1) the supervisor had actual or constructive knowledge that subordinate's conduct "posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff" (2) the supervisor responded in a manner that was so inadequate that it showed "deliberate indifference to or tacit authorization" of the subordinate's conduct; and (3) there was "an affirmative causal link between the supervisor's inaction" and the plaintiff's constitutional injury. *Timpson by & through Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

In rebuttal, Plaintiff asserts generally that "FCADC officials – acting under the direction of Sheriff Jenkins and Inmate Services Director Martin – provided extensive religious accommodations for Christian detainees while denying equivalent accommodations to Muslims." ECF No. 23-1 at 3. His Response does not clarify what any of the unnamed correctional officers did, when they did it, nor how their actions encroached upon his First Amendment rights. While Plaintiff insists that more opportunities were provided to Christian detainees at the direction of Defendant Martin, the evidence appended to his unverified Amended Complaint, *i.e.*, the grievances he filed, establish that was not the case. ECF No. 17-1 at 1. Further, nothing in Plaintiff's grievance indicates that Plaintiff asked for a Quran in Arabic; rather, he asked for one that was larger than the pocket sized one he already had. *Id.* Additionally, Plaintiff did not include anything in that grievance about volunteer imams who were available to come to FACDC for Muslim services. *Id.* While Plaintiff insists that the Amended Complaint is sufficient because it alleges that "volunteers and donated religious materials were available and offered to the jail, and Defendants refused to utilize or distribute them" (ECF No. 24-1 at 5), such generalized, non-specific claims are insufficient to impose personal liability. To allege that a defendant violated Plaintiff's constitutional rights, "the complaint must make defendant-specific allegations. The allegations must be particular enough to allow one to infer what each defendant did and knew." *Rice v. Adams*, 172 F.4th 428, 432 (4th Cir. 2026), citing *Iqbal*, 556 U.S. 678–79. The Amended Complaint does not state a claim against Jenkins, Martin, or the John Doe Correctional Officers with regard to Plaintiff's First Amendment rights.

The Amended Complaint also fails to state a claim against Jenkins, Martin and the John Doe Correctional Officers with regard to non-delivery of his mail. Prisoners have a constitutionally protected right to send and receive mail. *See Thornburgh v. Abbott*, 490 U.S. 401,

18

407 (1989); *Moorehead v. Keller*, 845 F. Supp. 2d 689, 692 (W.D.N.C. 2012). While the interference by prison officials with certain types of mail may state a constitutional claim, occasional incidents of delay or non-delivery of mail do not rise to a constitutional level. *Gardner v. Howard*, 109 F.3d 427, 430-31 (8th Cir. 1997); *Smith v. Mashner*, 899 F.2d 940, 944 (10th Cir. 1990). "[P]olicies concerning legal mail require heightened scrutiny, but isolated incidents of mishandling of mail do not state a claim." *Barnes v. Wilson*, 110 F. Supp. 3d 624, 632 (D. Md. 2015); *accord Buie v. Jones*, 717 F.2d 925, 926 (4th Cir.1983). Absent any assertion by Plaintiff that he suffered an actual injury (such as a missed legal deadline) as a result of his incoming letter not being delivered on one occasion, his complaint simply does not state a claim upon which relief may be granted.

Prisoners also have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977). However,

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997) (quoting *Lewis*, 518 U.S. at 355). "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned

19

to the political branches." *Lewis*, 518 U.S. at 349. Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Id*. at 399.

Defendants Jenkins, Martin, and John Doe Correctional Officers argue that Plaintiff fails to state an access to courts claim because Plaintiff does not allege actual injury to his ability to litigate his case; he does not claim he was prevented from accessing other methods of researching relevant legal issues at the law library. ECF No. 18-1 at 21-23. In his Response, Plaintiff explains that the actual injury he alleged was that Defendants' "unlawful mail policy and specific acts, thwarted his ability to litigate his criminal case, causing him to miss deadlines and imperiling his legal position." ECF No. 24-1 at 8. Neither Plaintiff's Amended Complaint nor his Response in Opposition to the Motion to Dismiss illuminate the nature of the claim he sought to advance as non-frivolous, nor can it be discerned from the face of the Amended Complaint what is meant by "imperiling his legal position," and no evidence is offered as to any missed deadlines. An actual injury should not be difficult to state or discern. Further, Plaintiff's failure to include information about the criminal charges against him, the argument he wished to raise, and how the failure to deliver the materials sent to him by his family prevented him from making those arguments, are all essential facts missing from the Amended Complaint. For these reasons, the access to courts claim must be dismissed for failure to state a claim.

## C.    Motion for Summary Judgment

NaphCare asserts that the Amended Complaint fails to adequately state a *Monell* claim against it and otherwise fails to state a constitutional claim against it or any of its employees for the act of placing Plaintiff on segregation while he refused to take blood pressure medication. ECF No. 21-1. In *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), the Supreme

Court held that local governmental entities may be liable under § 1983 based on the unconstitutional actions of individual defendants where those defendants were executing an official policy or custom of the local government that violated the plaintiff's rights. *Id.* at 690–91. The *Monell* Court explained: "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury the government as an entity is responsible under § 1983." *Id.* at 694; *see Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). *Monell* liability has been extended to private entities operating under color of state law, including private prison health care providers. *See, e.g.*, *West v. Atkins*, 487 U.S. 42, 49 (1988); *Polk Cnty. v. Dodson*, 454 U.S. 312, 320 (1981); *Rodriguez v. Smithfield Packing Co.*, 338 F.3d 348, 355 (4th Cir. 2003); *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999). Thus, those standards applicable to municipalities apply with full force to NaphCare. *See Rodriguez*, 338 F.3d at 355 (observing that principles of § 1983 municipal liability "'apply equally to a private corporation'" acting under color of state law) (citation omitted).

A viable § 1983 *Monell* claim consists of two components: (1) the municipality or corporate entity had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights. *See, e.g.*, *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997); *Kirby v. City of Elizabeth City*, 388 F.3d 440, 451 (4th Cir. 2004), *cert. denied*, 547 U.S. 1187 (2006); *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). Assuming there is a policy in place authored or created by NaphCare or officials at FCADC that requires assignment of pretrial detainees with high blood pressure who refuse medication to a

cell in the Medical Unit, Plaintiff's claim fails on the second prong of the *Monell* claim.[2] Specifically, he cannot establish that the policy is unconstitutional and resulted in a violation of his constitutional rights.

To state a § 1983 claim based on unconstitutional conditions of confinement, a pretrial detainee must allege "that the condition or restriction was imposed with an express intent to punish or was not reasonably related to a legitimate nonpunitive government objective." *Timms v. U.S. Att'y Gen.*, No. 22-6338, 2024 WL 591896, at *3 (4th Cir. Feb. 14, 2024) (citing *Matherly v. Andrews*, 859 F.3d 264, 275 (4th Cir. 2017)); *see also Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023) (noting plaintiff can state a claim based on a "governmental action" that "is not 'rationally related to a legitimate nonpunitive governmental purpose' or is 'excessive in relation to that purpose'"). To establish that a particular condition or restriction of detention constitutes impermissible punishment in violation of the Fourteenth Amendment, a plaintiff must show either (1) an expressed intent to punish or (2) that the restriction was not reasonably related to a legitimate non-punitive governmental purpose. *Martin v. Gentile,* 849 F.2d 863, 870 (4th Cir. 1988), *see also Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (explaining that the focus of the inquiry is whether the subject conditions amount to punishment of the pre-trial detainee because due process proscribes punishment of a detainee before proper adjudication of guilt). "[N]ot every inconvenience encountered during pretrial detention amounts to 'punishment' in the constitutional sense." *Martin*, 849 F.2d at 870 (4th Cir. 1988) (citing *Bell*, 441 U.S. at 538-40). A particular restriction or condition of confinement amounts to unconstitutional punishment in violation of the Fourteenth Amendment if it is imposed by prison officials with the express intent to punish, or the decision is

---

[2] That is not to say that Plaintiff's assignment to a cell in the Medical Unit was premised on an inflexible policy, custom or practice.  The undisputed material facts before the court are that his assignment was premised on a medical decision related to his health.

not reasonably related to a legitimate, non-punitive goal. *Bell*, 441 U.S. at 538-39 (restrictions or conditions that are arbitrary or purposeless may be considered punishment). Here, the undisputed material facts are that Plaintiff was assigned to a cell in the Medical Unit by medical staff so that his health could be monitored.

Decisions made by medical or other professionals are presumptively valid, and "liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg v. Romeo,* 457 U.S. 307, 323 (1982). Fourteenth Amendment claims against medical providers may be sustained by pretrial detainees upon a showing that "(1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed." *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023). A pretrial detainee "no longer has to show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm." *Id*. There is no dispute that NaphCare and its employee Nurse Jane Doe were on notice that Plaintiff had a serious medical condition; thus, if their action or inaction posed an unjustifiably high risk of harm to Plaintiff, they face liability.

The undisputed material factual record before the court is as follows. Plaintiff was confined to Medical Housing from September 21, 2023, until October 12, 2023, when he was released from custody. ECF No. 21-9 at 2. He was first informed that his blood pressure reading

23

was high (171/101) on September 14, 2025, and a nurse told him she wanted to see if the on-call medical provider wanted to prescribe medication on a "stat" basis to treat the condition. ECF No. 21-3 at 2. Plaintiff declined the medication without explanation. *Id*. The nurse informed Plaintiff of the risks for untreated hypertension; nonetheless, Plaintiff continued to refuse further medical assessment or treatment. *Id*. Over the following two days, Plaintiff's blood pressure remained high, with measurements of 166/142 and 176/122. *Id*. He continued to refuse medication and information regarding hypertension. *Id*.

On September 19, 2023, Plaintiff was seen in the Medical Clinic for evaluation of his hypertension and medical counseling. ECF No. 21-4 at 2. At that time, it was noted that Plaintiff "emphatically refuses all medications and reports" and he told medical staff that he does not take medicine and does not see a provider in the community. *Id*. Plaintiff also stated that he was unaware of any prior cardiac disease; he denied chest pain, shortness of breath, palpitations, edema, weakness, fatigue, and headaches. *Id*. His blood pressure was measured at 178/110. *Id*. The next day, his blood pressure was documented at 202/147. *Id*.

The notes for September 20, 2023, state that Plaintiff refused medication on multiple occasions and had been educated regarding the consequences of not treating his hypertension but, due to his blood pressure being "very uncontrolled and dangerously high," efforts to gain his compliance and to educate him would be encouraged. *Id*. It was also noted that Plaintiff had "the right to refuse medical treatment." *Id*.

On September 21, 2023, Plaintiff's blood pressure remained elevated at 171/120. ECF No. 21-5 at 2. A Physician's Assistant ("P.A."),[3] noted that Plaintiff's hypertension was uncontrolled, and he was not compliant with medication. *Id*. Plaintiff told the P.A. he wanted to try lifestyle

---

[3] Plaintiff alleges this individual was a nurse. Even if true, this is not a material factual dispute.

changes and "emphatically state[d] he does not take medications" but then later said he does not take medication "unless he researches them, or his family researches them." *Id*. Plaintiff also stated at one point during the encounter that he did not take the medication because "it wasn't explained to me last time;" when he was reminded that he was in fact told about the risks of not treating hypertension, Plaintiff dismissed the concern by saying he was "not going to die." *Id*. At that time, Plaintiff was housed "in medical for safety" due to uncontrolled hypertension and medication non-compliance. *Id*.

There is no genuine dispute of material fact in the record before the court. Plaintiff fails to create a triable issue as to the motivation, intention, or reason for his placement in a Medical Unit cell, as the undisputed record is that the decision to confine Plaintiff to a cell in the Medical Unit was motivated by concern for, and a need to monitor, his health. Nothing on this record suggests that Plaintiff was promised, cajoled, or enticed to take the medication in exchange for more favorable housing accommodations. Instead, the record allows only that medical staff repeatedly told him about the dangers of not taking the medication. Further, there is nothing in the record to suggest that Plaintiff was penalized for refusing to take the medication; rather, he was simply placed in a cell where his condition could be more easily monitored. Lastly, it is undisputed that Plaintiff never took the medication offered; therefore, it cannot be said that he was "forced" to take it in violation of his due process rights.[4] NaphCare and Nurse Jane Doe are entitled to summary judgment in their favor on this claim.

To the extent Plaintiff attempts to implicate Sheriff Jenkins in this claim because he enforced a policy, that claim shall not proceed. Correctional personnel generally are not liable for deliberate indifference when they defer to medical staff decisions about medical care. *See Miltier*

---

[4] Plaintiff's reliance on *Washington v. Harper*, 494 U.S. 210 (1990), is unavailing. In that case, it was the actual treatment of the prisoner with antipsychotic drugs against his will that triggered the need for due process protections.

*v. Beorn*, 896 F.2d 848, 854-55 (4th Cir. 1990) (noting that a warden was entitled to rely upon the health care providers' expertise); *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (stating that "[i]f a prisoner is under the care of medical experts ... a non-medical prison official will generally be justified in believing that the prisoner is in capable hands"); *Shelton v. Angelone*, 148 F. Supp. 2d 670, 678 (W.D. Va. 2001) ("Prison personnel may rely on opinion of the medical staff as to the proper course of treatment."). As such, Sheriff Jenkins was entitled to rely on medical staff's recommendation that Plaintiff be housed in a medical cell so that his hypertension could be better monitored.

**C.      State law claims**

Plaintiff's State law claims under the Maryland Declaration of Rights, Art. 24 and 36 will be dismissed without prejudice. "When, as here, the federal claim is dismissed early in the case, the federal courts are inclined to dismiss the state law claims without prejudice rather than retain supplemental jurisdiction." *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-727 (1966).

### IV.      CONCLUSION

For the reasons stated, Defendant Jenkins, Martin, and John Doe Correctional Officers' Motion to Dismiss will be GRANTED; and Defendant NaphCare and Nurse Jane Doe's Motion to Dismiss or, in the Alternative, for Summary Judgment, construed as a Motion for Summary Judgment, will be GRANTED. A separate Order follows.

/S/

May 21, 2026

_____
Julie R. Rubin
United States District Judge

26